UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUZANNE RENEE BILLOTTI,

Plaintiff, Civil Action No. 13-11996

v. District Judge AVERN COHN
Magistrate Judge R. STEVEN WHALEN

COMMISSIONER OF SOCIAL SECURITY,

Defendant.
_______________________________/

**REPORT AND RECOMMENDATION**

Plaintiff Suzanne Renee Billotti ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act. The parties have filed cross-motions for summary judgment which have been referred for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B). For the reasons discussed below, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further proceedings.

**PROCEDURAL HISTORY**

On April 20, 2011, Plaintiff filed an application for DIB, alleging disability as of May

1, 2010 (Tr. 103). Following the initial denial of the claim, she requested an administrative hearing, held in Oak Park, Michigan on April 18, 2012 before Administrative Law Judge ("ALJ") Melvyn B. Kalt (Tr. 29). Plaintiff, represented by Kiel Roeschke, testified (Tr. 32-50), as did Vocational Expert ("VE") James Fuller (Tr. 50-54). On May 1, 2012, ALJ Kalt found that although Plaintiff was unable to return to her past relevant work, she could perform a significant range of other work (Tr. 22-23). On March 11, 2013, the Appeals Council denied review (Tr. 1-4). Plaintiff filed suit in this Court on May 6, 2013.

## BACKGROUND FACTS

Plaintiff, born July 17, 1965, was 46 when the ALJ issued his decision (Tr. 23, 103). She completed high school (Tr. 122) and worked previously as a medical assistant, personal assistant, a post office worker, and waitress (Tr. 118). Her application for benefits alleges disability as a result of 2006 open heart surgery (Tr. 117).

### A. Plaintiff's Testimony

Plaintiff offered the following testimony:

In addition to a high school diploma, she had a medical assistant certification (Tr. 32). Until May, 2010, she worked as a home care medical assistant (tr. 32). She stopped working because of her inability to lift patients due to back problems (Tr. 32). Pressure on her spinal chord created leg numbness (Tr. 34). In addition to the back problems, she experienced Carpal Tunnel Syndrome ("CTS") for which she had undergone right wrist surgery (Tr. 33). Due to that condition, she was no longer able to hold a needle or "do any phlebotomy work"

(Tr. 33). She also experienced a heart valve condition requiring open heart surgery in 2006 and a rotary cuff tear (Tr. 33). As a result of the various physical conditions, she was depressed and anxious (Tr. 33). Anxiety led to "panic attacks in crowded areas" (Tr. 33).

On a scale of one to ten, Plaintiff experienced level "six" pain when using pain medication (Tr. 35). She could stand only 40 minutes, sit for less than an hour, and walk for only one block (Tr. 35-36). She took walks with her husband, but walked for only short distances before requiring a break (Tr. 36-37). Descending stairs caused knee pain and bending caused back pain (Tr. 37). CTS caused nighttime pain and problems gripping and grasping (Tr. 38). She used braces on both wrists (Tr. 39). She was incapable of lifting a gallon of milk with one hand (Tr. 39). She was most comfortable in a reclining position with a pillow supporting her lumbar spine (Tr. 40).

On a typical day, she arose, took her medication, rested, then spent the rest of the day performing light household chores with intermittent breaks (Tr. 40). She experienced the side effect of fatigue from heart medication, Xanax, and Valium (Tr. 41). On a typical night, she slept four to five hours (Tr. 42). She was socially isolated as a result of depression (Tr. 42). She spent approximately one day each week confined to her room, adding that her husband encouraged her to leave her room and engage in activities (Tr. 43). On occasion, she experienced panic attacks while grocery shopping, which she coped with by leaving the store while her husband finished shopping (Tr. 44). Physical pain caused concentrational limitations but she did not experience problems following television shows (Tr 45). She held

a valid driver's license but did not drive more than twice a week (Tr. 46). She experienced problems buttoning clothes but was independent in self care tasks (Tr. 46).

In response to questioning by her attorney, Plaintiff stated that without pain medication, she experienced level "ten" pain (Tr. 47). She admitted that in the first and second quarters of 2010, she received unemployment compensation, during which time she looked for work (Tr. 49).

**B. Medical Evidence**

**1. Treating Sources[1]**

In May, 2006, Plaintiff underwent a cardiac catheterization after reporting chest pain (Tr. 197). The catheterization did not show significant blockage (Tr. 197-198, 200-201, 204). However, an echocardiogram showed mild to moderate mitral valve prolapse (Tr. 198, 204). In July, 2006, Plaintiff underwent a mitral valve repair, performed without complications (Tr. 209, 256). Post-surgical treatment notes by cardiologist Larry R. Rothstein, D.O. from August, 2006 state that Plaintiff felt "remarkably improved" and did not experience shortness of breath (Tr. 253). In September, 2006, treating physician Joseph P. Lajoie, D.O. opined that Plaintiff should limit any pushing, pulling, and lifting to less than 10 pounds but that she did not experience postural or mental limitations (Tr. 261).

A January, 2010 x-ray of the chest was unremarkable (Tr. 415). In June, 2010,

[1]Records significantly predating the alleged onset date of May 1, 2010 have been included for background purposes only.

Plaintiff sought emergency treatment after injuring her left arm while carrying chairs up a flight of stairs (Tr. 316). Imaging studies showed degenerative changes to the left elbow (Tr. 318, 329, 420). A chest x-ray was unremarkable (Tr. 427). In July, 2010, Dr. Lajoie prescribed a right wrist splint (Tr. 408). August, 2010 nerve conduction studies showed right-sided CTS (Tr. 306). John R. Wagner, Jr., M.D. advised Plaintiff to quit smoking (Tr. 308). Dr. Lajoie opined that Plaintiff's shoulder problems would incapacitate her for at least three months[2] (Tr. 400).

The following month, Plaintiff underwent nerve block injections to the left shoulder (Tr. 311-313). Following left shoulder arthroscopic surgery the same month (Tr. 418-419), Jeff Carroll, D.O. recommended the commencement of a physical therapy program (Tr. 322). He found that Plaintiff could "advance as tolerated without restrictions" (Tr. 323). A chest x-ray was negative for abnormalities (Tr. 394).

In January, 2011, a cardiac catheterization showed minimal blockage (Tr. 336, 339). Dr. Rothstein noted Plaintiff's allegations of fatigue despite good results from the catheterization (Tr. 376). The same month, Plaintiff was advised to "initiate [a] home exercise program" (Tr. 321). Treating notes from the same month state that Plaintiff exhibited a normal effect with 5/5 strength in all muscle groups (Tr. 321). In April, 2011, Plaintiff underwent bone grafting of the right wrist (Tr. 431).

---

[2]I am unable to tell whether Dr. Lajoie intended to convey that Plaintiff was incapacitated from September, 2010 to the end of the year, or, from September, 2010 for one year (Tr. 400).

A July, 2011 assessment of Plaintiff's work-related abilities states that she could lift 10 pounds frequently and 20 occasionally; stand or walk for at least six hours; sit for unlimited periods; push or pull without limitations in the lower extremities; and could perform limited pushing or pulling in the upper extremities (Tr. 441). The assessment restricted Plaintiff to occasional postural activities but found the absence of manipulative or environmental limitations (Tr. 442).

In October, 2011, Dr. Rothstein noted that a physical exam was negative for abnormalities (Tr. 462). The following month, neurologist Adam Feinstein, D.O. found no neurological basis for Plaintiff's reports of back, pelvis, and rib cage pain, finding the presence of a "somatic dysfunction" (Tr. 463). February, 2012, imaging studies of the left elbow showed degenerative changes but no other abnormalities (Tr. 478). The same month, Dr. Lajoie found that "emotional factors" contributed to Plaintiff's functional limitations (Tr. 485). He found that pain would interfere "constantly" with Plaintiff's prospective work performance and that she was incapable of even low stress jobs (Tr. 485). He opined that she was incapable of their sitting or standing for more than two hours in an eight-hour workday, limited to lifting 10 pounds on a "rare" basis, and unable to perform any overhead reaching (Tr. 486-487). Medical records dating from December, 2011 to March, 2012 note a bright affect and good posture despite alleged thoracic back pain (Tr. 492-495). In March, 2012, Dr. Rothstein noted normal cardiac functioning (Tr. 497).

**2. Non-Treating Sources**

A December, 2006 Residual Functional Capacity Assessment performed by Tammy Nguyen on behalf of the SSA found that Plaintiff could lift 50 pounds occasionally and 25 frequently; sit, stand, or walk for six hours in an eight-hour workday; and push and pull without limitation (Tr. 297). She deemed Plaintiff capable of frequent climbing, balancing, stooping, kneeling, crouching, and crawling (Tr. 298). Nguyen found the absence of additional limitations (Tr. 299-300).

In September, 2011, Patricia Madej, Ph.D. performed a consultative psychological examination on behalf of the SSA, noting Plaintiff's claims that she became "physically ill" when touching a patient in her work as a care giver (Tr. 454). She reported that depression prevented her from leaving her room or performing household chores (Tr. 454). She reported a 2003 suicide attempt at which time she was also treated for drug abuse (Tr. 454).

Dr. Madej observed that Plaintiff was well groomed with good eye contact and contact with reality (Tr. 456). Dr. Madej found Plaintiff "[p]oorly motivated to change her life style and seek employment or training" (Tr. 456). She assigned Plaintiff a GAF of "65-70" with a fair prognosis[3] (Tr. 458).

---

[3]GAF scores in the range of 61–70 suggest "some mild symptoms or some difficulty in social, occupational, or school functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

**3. Evidence Submitted After the May 1, 2012 Administrative Decision**

In October, 2012, Dr. Feinstein completed a "lumbar spine" functional assessment, finding that Plaintiff was incapable of standing or walking for more than two hours in an eight-hour workday or sitting for more than four (Tr. 505). He found a need for leg elevation and that Plaintiff was limited to lifting less than 10 pounds on an occasional basis (Tr. 505). He found a preclusion on all ladder climbing and restricted stair climbing to a "rare" basis (Tr. 506). He found that Plaintiff's condition would result in more than four days of absences each month (Tr. 506).

**C. Vocational Expert Testimony**

VE James Fuller classified Plaintiff's prior work as a medical assistant as skilled and exertionally light; bartender, semiskilled/light; waitress, unskilled/light; restaurant manager, skilled/light; and mail processor, semiskilled/light[4] (Tr. 51). The VE testified that if Plaintiff's testimony were fully credited, she would be unable to return to her former jobs due to difficulty gripping, grasping, and writing; isolation as a result of depression; and

---

4

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

medication side effects (Tr. 51). The ALJ then posed a hypothetical question to the VE:

> If I were to find that the claimant was capable of being on her feet for a majority of the day as long as she could sit from time to time when she wished; that she could perform no work that required lifting more than 5 pounds; that she could perform no work that required forceful grasping using the right upper extremity. She would be limited to simple, unskilled tasks that did not involve public contact. Would there be any of her past work that she could perform? (Tr. 52).

The VE testified the above-stated limitations precluded the performance of Plaintiff's past relevant work but allowed for the work of a packer (2,000 positions) and inspector (1,000) (Tr. 52). He concluded by stating that his testimony was consistent with the information found in the Dictionary of Occupational Titles ("DOT")(Tr. 54).

**D. The ALJ's Decision**

Citing the medical transcript, the ALJ found that Plaintiff experienced the severe impairments of "carpal tunnel syndrome, shoulder pain, wrist fracture, obsessive compulsive disorder, and attention deficit hyperactive disorder" but that none of the impairments met or equaled any impairment listed in 20 CRF Part 404, Subpart P, Appendix 1 (Tr. 16). He found that Plaintiff experienced mild deficiencies in daily living, social functioning, and concentration, persistence, or pace, noting that she was able to care for her personal needs, enjoyed close ties with her family, and could handle her own finances (Tr. 17). ALJ Kalt found that Plaintiff retained the following residual functional capacity ("RFC"):

> [L]ight work . . . except that the claimant must have a sit/stand option at will; is unable to perform work that requires lifting more than five pounds; is limited to no forceful grasping with the right upper extremity; is limited to no overhead use with the left upper extremity; is limited to simple unskilled tasks;

and the claimant is limited work that does not involve public contact (Tr. 18). Citing the VE's testimony, the ALJ found that although Plaintiff was unable to perform her past relevant work, she could perform a range of work in the occupations of packer and inspector (Tr. 22-23).

The ALJ discounted Plaintiff's allegations of disability, noting that she continued to drive, perform light household chores, prepare simple meals, shop, use a computer, care for her dogs, and watch movies (Tr. 19). He cited Dr. Madej's finding of only mild psychological symptoms (Tr. 21). In regard to Plaintiff's cardiac condition, the ALJ noted that 2010 and 2011 imaging studies showed unremarkable findings (Tr. 20).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less than a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into

account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### A. Plaintiff's Arguments for Remand

Plaintiff, proceeding *pro se*, makes three arguments for remand. She takes issue with the hypothetical question to the VE, the ALJ's credibility determination, and the ALJ's rejection of Dr. Lajoie's treating opinion. *Plaintiff's Brief, Docket #13*. First, she contends that the hypothetical question to the VE, which formed the basis for the RFC found in the administrative opinion, did not reflect her true degree of limitation. *Id.* at 2. In an overlapping argument, she disputes the ALJ's determination that her claims were not wholly credible, contending that the inclusion of her alleged limitations in the hypothetical question would have resulted in a disability finding. *Id.* Finally, she argues that the ALJ erred by rejecting Dr. Lajoie's disability findings in favor of a treating source opinion with an "'illegible signature.'" *Id.* at 3 (citing Tr. 21).

None of these arguments provides a basis for remand. While it is well settled that vocational testimony given in response to a hypothetical question constitutes substantial evidence only if it accounts for a claimant's full degree of work-related impairment, *Varley v. Secretary of HHS*, 820 F.2d 777, 779 (6th Cir.1987), an ALJ is not obliged to include discredited findings or all of the claimant's allegations in the hypothetical question to the VE. *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118–119 (6th Cir.1994). Here, ALJ Kalt articulated his reasons for rejecting a portion of Plaintiff's claims. He noted that Plaintiff's claims of fatigue and shortness of breath were undermined by January, 2011,

October, 2011, and March, 2012 records stating that she did not experience shortness of breath or other breathing difficulties (Tr. 20). He noted that treating records following atroscopic shoulder surgery and carpal tunnel release showed a good recovery and decrease in symptomology (Tr. 20). In response to Plaintiff's allegations of severely limited activities as a result of physical problems, the ALJ observed that her regular activities included housework, taking care of a dog, self care tasks, and driving (Tr. 19). A neurological examination found no objective support for Plaintiff's claim of back and rib cage pain (Tr. 463).

In regard to the alleged psychological impairments, the ALJ cited Dr. Madej's September, 2011 findings of only mild psychological limitation (Tr. 20-22). Plaintiff criticizes the ALJ for also pointing out that she did not seek mental health treatment, noting that her failure to seek treatment was a symptom of mental illness. *Plaintiff's Brief* at 3. Plaintiff is correct that the absence of treatment records, with nothing more, cannot be used to reject claims of limitation. *See* SSR 96-7p. However, here, the ALJ noted that the absence of treatment records, *coupled* with Dr. Madej's finding of only mild psychological limitations (and lack of motivation to work) supported the rejection of Plaintiff's more extreme allegations of symptomology (Tr. 21).

Further, the ALJ did not wholly reject Plaintiff's claims of weakness, fatigue, joint problems and psychological limitation (Tr. 19). The hypothetical question and RFC included a sit/stand at will option with manipulative restrictions with limitations to five pounds lifting,

simple, unskilled tasks, and work that did not require interaction with the general public (Tr. 18, 52). For these reasons, the deference generally accorded an ALJ's credibility determination is appropriate here. "[A]n ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.'" *Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir.2007)(citing *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997)). See also *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1234 (6th Cir.1993); *Anderson v. Bowen,* 868 F.2d 921, 927 (7th Cir.1989) (citing *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986)) (An ALJ's "credibility determination must stand unless 'patently wrong in view of the cold record' ").

The rejection of Dr. Lajoie's February, 2012 opinion is also well explained and supported. The ALJ noted that the treating physician's finding that Plaintiff was unable to perform any exertional activity for four hours each day and required more than four absences each month was "conclusory" and "inconsistent with the record as a whole," including normal chest x-rays and cardiac examinations. (Tr. 20-21). Plaintiff's argument that the ALJ's adoption of a medical opinion with "'an illegible signature,'" instead of Dr. Lajoie's February, 2012, opinion is a red herring. *Plaintiff's Brief* at 3 (citing Tr. 21). First, Plaintiff's counsel at the administrative hearing acknowledged that the July, 2011 assessment

with the illegible signature was completed by Dr. Lajoie[5] (Tr. 54, 4 41). Dr. Lajoie's July, 2011 opinion that Plaintiff could perform a range of exertionally light work undermines the his February, 2012 finding that Plaintiff was incapable of even sedentary work. The ALJ did not err in adopting one of Dr. Lajoie's opinions (particularly one that was supported by other record evidence) over the other. Alternatively, assuming that the assessment with the illegible signature actually represented the opinion of a non-treating source, the ALJ was permitted to adopt the non-treating assessment provided that he explained and supported his reasons for rejecting the conflicting treating source opinion. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d 378, 390 (6th Cir.2004). Because the ALJ provided "good reasons" for his rejection of the February, 2012 findings and the adoption of the July, 2011 findings, remand on this basis is not warranted.[6] 20 C.F.R. 404.1527(c)(2–6).

---

[5]The July, 2011 opinion is referred to as "Exhibit 18F" by Plaintiff's counsel (Tr. 54).

[6]

Included with the transcript is a October, 2012 "lumbar spine" functional assessment by Dr. Feinstein stating that Plaintiff was incapable of even sedentary work (Tr. 505-506). To establish grounds for remand based on material submitted after the administrative decision, the claimant must show that the "new evidence is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." 42 U.S.C. § 405(g). Plaintiff cannot show that these records are material to the ALJ's decision. First, she has not offered "good cause" for the tardy submission of this evidence. "[G]ood cause contemplates more than strategic delay, or sandbagging, of evidence and more than simple miscalculation of the necessity of producing such evidence in the first instance to establish a claim of disability." *Haney v. Astrue*, 2009 WL 700057, *6 (W.D.Ky. March 13, 2009) (citing *Thomas v. Secretary*, 928 F.2d 255, 260 (8th Cir., 1991)); See also *Ledford v. Astrue*, 311 Fed.Appx. 746, 757, 2008 WL 5351015, *10 (6th Cir. December 19, 2008) (citing *Martin v. Commissioner of Social Security*, 170 Fed.Appx. 369, 374–75, 2006 WL 509293 *5 (6th Cir. March 1, 2006)). Further, I note that Dr. Feinstein's assessment was

**B. Grounds for Remand**

Nonetheless, discrepancies between the hypothetical question forming the basis of the VE's job testimony and the RFC constitute grounds for remand.[7] At the hearing, the ALJ asked the VE what jobs could be performed by an individual requiring a sit/stand option who was incapable of lifting more than 5 pounds or performing work that required forceful grasping using the right upper extremity (Tr. 52). In response, the VE stated that the limitations allowed for the work of a packer (2,000 positions) and inspector (1,000) (Tr. 52). The ALJ adopted the VE's job findings in the administrative opinion (Tr. 23). So far, so good.

However, in crafting the almost identical RFC in the administrative opinion, the ALJ added the modifier of exertionally "light work" (Tr. 18). While the ALJ adopted the job findings of the VE, it is unclear whether the jobs of packer and inspector represent sedentary or light positions. The possibility that these positions were sedentary, rather than light, is supported by the fact that a limitation of five-pound lifting suggests that the positions fell

---

created over five months after the ALJ's decision. Records pertaining to Plaintiff's condition after May 1, 2012 are intrinsically irrelevant to the current application for benefits. *Sizemore v. Secretary of Health & Human Services*, 865 F.2d 709, 712 (6th Cir.1988).

[7] A district court has a duty to independently review the record for error even if a plaintiff–and particularly a *pro se* plaintiff has not filed a summary judgment motion. *See Wright v. Comm. of Soc. Sec.*, 2010 WL 5420990 (E.D. Mich. 2010)(Friedman, J.), citing *Kenney v. Heckler*, 577 F.Supp. 214 (N.D. Ohio 1983).

into sedentary category. Under the applicable regulation, sedentary work is defined as "lifting no more than 10 pounds at a time . . ." whereas light work generally requires lifting up to 20 pounds occasionally and 10 pounds frequently. 20 C.F.R. § 404.1567.

To be sure, it is not a given that the five-pound lifting restriction stated in the hypothetical question automatically implies a limitation to sedentary work. The same regulation states in regard to light work that "the weight lifted may be very little," so long as a "good deal of walking or standing" involved. § 404.1567(b). However, because the ALJ did not include the modifier of "light work" in the hypothetical question to the VE, it is unclear whether Plaintiff, as described in the hypothetical, is capable of light work or limited to sedentary work. Determination of whether the jobs cited by the VE referred to light or sedentary positions is also muddled by the fact that the VE did not provide DOT job codes allowing the Court to determine whether the work was sedentary or light. The omission of "light work," (as found in the RFC) from the question relied upon by the VE for the job findings constitutes reversible error. *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F.Supp.2d 702, 706 (E.D.Mich.2003)(Roberts, J)(citing *Gallant v. Massanari,* 2001 WL 912406 (D.Me.2001))("Reversible error for ALJ to rely upon jobs erroneously listed by VE that were inconsistent with Plaintiff's RFC"). Because it is unclear whether the VE's job testimony is actually inconsistent with the ALJ's finding that Plaintiff could perform light work, a remand is required for clarification.

In particular, the question of whether Plaintiff is limited to sedentary work is critical

to her possible entitlement to future benefits. Should Plaintiff decide to reapply for DIB, the decision maker will be bound by the RFC found in ALJ Kalt's May 1, 2012 determination absent a new and material change in Plaintiff's condition. *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir.1997). Plaintiff will turn 50 on July 17, 2015. Under the Social Security Administration's regulations, "a person (1) who is 'closely approaching advanced age' (that is, a person between the ages of fifty and fifty-four, see 20 C.F.R. § 404.1563(d)), (2) who has a high school education that does not provide for direct entry into skilled work, and (3) whose previous work experience was skilled or semiskilled work that is not transferable to other jobs in the national economy, is generally considered disabled ... if her impairments limit her 'maximum sustained work capability' to sedentary work." *Rogers v. Commissioner of Social Security*, 2000 WL 799332, * 1 (6th Cir. June 9, 2000). "Such a claimant is not considered disabled if she can do light or medium work." *Id.*; 20 C.F.R. Part 404, Subpart P, App. 2, Rule 201.14. Because a finding that Plaintiff was limited to sedentary work result in disability as of her 50th birthday, the question of whether she is capable of sedentary or light work requires clarification.

For the reasons set forth in Section **B.** of the analysis, a remand is required. However, the present transcript does not establish an "overwhelming" case for disability and the errors discussed herein do not automatically entitle the Plaintiff to an award of benefits. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171 (6th Cir.1994). At a minimum, determination of Plaintiff's exertional abilities is required.

## CONCLUSION

Accordingly, I recommend that Defendant's Motion for Summary Judgment be DENIED and that Plaintiff's Motion for Summary Judgment be GRANTED to the extent that the case is remanded to the administrative level for further proceedings consistent with this Report.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall

address specifically, and in the same order raised, each issue contained within the objections.

s/R. Steven Whalen
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Dated: May 19, 2014